UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-cv-14353-DMM

KEITH PEARCE and JANET PEARCE,
individually and on behalf of all others
similarly situated,

    Plaintiffs,

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY and STATE
FARM FLORIDA INSURANCE
COMPANY,

    Defendants.
_____/

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT**

Plaintiffs, Keith Pearce and Janet Pearce ("Plaintiffs"), submit this Response in Opposition to the Motion to Dismiss First Amended Class Action Complaint (ECF No. 51) ("Motion") filed by State Farm Mutual Automobile Insurance Company ("State Farm Mutual") and State Farm Florida Insurance Company ("State Farm Florida") (together, "State Farm" or "Defendants").

## INTRODUCTION

The crux of Defendants' Motion to Dismiss is that State Farm Mutual is not a party to the Plaintiffs' personal articles policy ("PAP"). On this basis, Defendants argue that Plaintiffs lack standing to pursue contractual claims against State Farm Mutual and that this Court may not exercise jurisdiction over that Defendant. This argument, however, is wholly without merit because it would require the Court to completely ignore the highly detailed allegations of Plaintiffs' First Amended Class Action Complaint in violation of the motion to dismiss standard. Those unrebutted allegations are more than sufficient to state claims against State Farm Mutual and to establish this Court's jurisdiction, and Plaintiffs' standing on any one of three, independent bases: (1) contractual liability should be imputed to State Farm Mutual because the PAP is ambiguous as to the contracting parties and because State Farm Mutual exercised complete control over the PAPs and the administration thereof; (2) the organization and structure of the State Farm entities as well as the misuse of State Farm Florida justifies piercing the corporate veil; and (3) State Farm Mutual is liable under the PAPs on the theory of apparent agency. Defendants' Motion to Dismiss does not address the first basis, and the arguments against the second and third bases must be rejected because Plaintiffs' allegations—which Defendants fail to rebut—easily satisfy the pleading standard at this stage of the litigation.

Defendants' remaining arguments that the class allegations are insufficient, and that unjust enrichment cannot be asserted as an alternative to a claim for breach of contract are meritless on their face and directly contradicted by well-established precedent in this Circuit and the Supreme Court. This Court should decline Defendants' invitation to disregard the federal pleading standard and deny the Motion to Dismiss in its entirety.

## BACKGROUND

Plaintiffs' First Amended Class Action Complaint ("FAC") (ECF No. 41) asserts class claims for breach of contract and unjust enrichment against both State Farm Mutual and its wholly owned subsidiary, State Farm Florida, over which it exercises complete control. Plaintiffs' claims relate to Personal Articles Policies ("PAP" or "PAPs") which insure specific pieces of non-real

1

property, such as jewelry or artwork, against loss, theft, or damage. Plaintiffs allege that Defendants[1] breached a PAP they held by failing to refund to them unearned premiums collected over the life of the policy after they paid Plaintiffs' claim for total loss of the insured property, a diamond pendant. *Id.* at ¶ 2.

Plaintiffs further allege that all PAPs issued by Defendants contain essentially the same terms. *Id.* at ¶ 2. Defendants set the premium amounts for PAPs based upon the "amount insured," which itself is based on the appraised value of the personal article. *Id.* In the event of a claim for total loss, however, Defendants do not pay the amount insured. *Id.* Instead, Defendants pay the replacement value of the insured article. *Id.* When the replacement value paid on a total loss claim is less than the amount insured, the PAPs, by their express terms, *require* Defendants to refund their "unearned premium"—*i.e.*, the difference between the premium actually paid by the insured over the life of the policy (based on the appraised value of the insured article) and the premium that would have been paid based on the replacement value of the insured article. *Id.* Plaintiffs also allege that Defendants, as a common and uniform business practice and protocol, do not refund this unearned premium, thereby breaching the contracts with all members of the Class. *Id.*

This is exactly what occurred when Defendants paid Plaintiffs the replacement value for an insured diamond pendant and failed to reimburse the excess premium Plaintiffs paid over the life of the PAP to insure the property based on its significantly higher appraised value. *Id.* at ¶¶ 52–53. Based on these allegations, Plaintiffs seek certification of a nationwide class of persons who were paid a claim for total loss pursuant to a PAP and were not refunded the unearned premium collected over the life of the policy. *Id.* at ¶ 56.

## ARGUMENT

### I. LEGAL STANDARD

In analyzing a complaint subject to a motion to dismiss, courts must accept the factual allegations as true, construing them in the light most favorable to the plaintiff. *Pielage v. McConnel*, 516 F.3d 1282, 1284 (11th Cir. 2008); *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003); *see also S.-Owners Ins. Co. v. Wall 2 Walls Const., LLC,* No. 8:12-CV-1922-T-33TBM, 2012 WL 6009752, at *2 (M.D. Fla. Dec. 3, 2012) (the "Court accepts as true all allegations in the

---

[1] Reference to both State Farm Mutual and State Farm Florida as "Defendants" or "State Farm" is appropriate because State Farm Mutual acted through State Farm Florida and exercised complete control over its wholly owned subsidiary. FAC at ¶¶ 18–40.

complaint and construes them in the light most favorable to the plaintiff … [and] favors the plaintiff with all reasonable inferences from the complaint"). A plaintiff is generally not required to allege all the details upon which he bases his claim. *See* Fed. R. Civ. P. 8(a)(2). Instead, Rule 8(a)(2) only requires a short and plain statement that fairly notifies the defendant of the claim and the supporting grounds. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). The claims must be plausible on their face, meaning that a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## II. PLAINTIFFS HAVE STANDING TO ASSERT CLAIMS AGAINST STATE FARM MUTUAL BECAUSE IT IS A PARTY TO THE PAP.

Defendants' Motion to Dismiss is based almost entirely on the unsupported assertion that State Farm Mutual is not a party to the PAP. But Plaintiffs' detailed allegations, which must be taken as true, establish that both State Farm Mutual *and* State Farm Florida are liable for the breach of that agreement. First, the PAP is, at best, ambiguous as to the identity of the contracting entities, and contractual liability should, therefore, be imputed to State Farm Mutual. Second, State Farm Mutual's conduct and its relationship with State Farm Florida require piercing of the corporate veil to prevent injustice to Plaintiffs and the Class. Finally, State Farm Mutual is contractually liable based on the principle of actual or apparent agency.

### A. Contractual Liability Should Be Imputed to State Farm Mutual.

Plaintiffs sufficiently allege that both Defendants are parties to the PAP, or at the very least, that State Farm Mutual should be contractually liable on either one of two, independent bases: (1) because the PAP is intentionally ambiguous as to which State Farm entity is the contracting party; and/or (2) because State Farm Mutual exercised complete control over all aspects of the PAPs' creation, marketing, sales, underwriting and claims processing, including implementation of the scheme to uniformly breach those contracts by not returning unearned premiums. FAC at ¶¶ 24–28, 44–48, 52–55, 61, 63–64.

When interpreting an insurance policy, especially at the pleading stage, it is fundamental that all ambiguities must be construed in favor of the insured. *See St. Paul Fire & Marine Ins. Co. v. Lago Canyon, Inc.*, 561 F.3d 1181, 1191 (11th Cir. 2009); *see also Watkins Motor Lines, Inc. v. Crum & Forster Ins. Co.*, No. 306-CV-580-J-33MCR, 2006 WL 3328287, at *6 (M.D. Fla. Nov. 15, 2006) ("Plaintiff is correct that under Florida law, when an insurance contract is ambiguous,

3

any ambiguity should be construed in favor of the insured.") (citing *Church of the Palms-Presbyterian (U.S.A.), Inc. v. Cincinnati Ins. Co.*, 404 F.Supp.2d 1339, 1342 (M.D. Fla. 2005)). Courts applying this principle to an ambiguity as to the identity of the insurer in the policy have held that contractual liability must be imputed to both the parent and subsidiary entities.

*Watkins Motor Lines, Inc. v. Crum & Forster Ins. Co.*, No. 3:06–cv–580–J–33MCR, 2006 WL 3328287 (M.D. Fla. 2006), is but one example of a court holding both an insurer and its parent company liable. In *Watkins*, a case remarkably similar to the present one, the plaintiff asserted breach of contract and statutory bad faith claims against a subsidiary insurer and its parent company, alleging that *both* entities were liable under the policy at issue. *Id.* at *1–4. The defendant parent company, like State Farm Mutual here, moved to dismiss the complaint, arguing that it was not a party to the insurance policy. *Id.* at *2. The court denied the motion to dismiss, holding that "the identity of the insurer(s) [was] ambiguous" because, although the policy contained references to the subsidiary, the parent entity's name also "appear[ed] on numerous pages throughout the [p]olicy." *Id.* at *5.

The *Watkins* court imputed contractual liability to the parent insurer even though the policy there contained multiple references to the subsidiary. *Id*. (subsidiary referenced on **at least 13 pages** of the policy). Here, while the PAP contains several references to "State Farm" and State Farm Mutual, there is *no* mention of State Farm Florida in the document containing the policy terms. State Farm Florida is referenced three times but only in the separate "Renewal Certificate"—which also contains four references to "State Farm." (ECF No. 51-1 at 3–6). The allegations in the present case, therefore, provide substantially more justification for imputing liability under the PAP to the parent company, State Farm Mutual, than those the *Watkins* court deemed sufficient to impose liability on the parent insurer in that case.

In reasoning particularly applicable here, the *Watkins* court found that the policy's failure to clearly define the insurer created a critical ambiguity as to that entity's identity:

> Importantly, *there [was] no definition of insurer in the Definition section*. Rather, the only sections in the Policy which make any mention as to the identity of the insurer are ambiguous. In fact, the Policy merely states "[t]hroughout this policy . . . [t]he words 'we,' 'us' and 'our' refer to the Company providing insurance." . . . Notably, *the word Company is never defined in the Policy*.

4

*Watkins*, 2006 WL 3328287 at *5 (internal citations omitted) (emphasis added). Construing that ambiguity in the light most favorable to the plaintiff, the court denied the motion to dismiss and held that it was plausible the parent company was a party to the contract. *Id.* at *5, *8.

The PAP here suffers from the identical infirmity that the *Watkins* court deemed fatal to the arguments for dismissal of the parent company—it fails to identify State Farm Florida as the insurer. As Defendants readily admit, the PAP does not define the contracting party. Instead, the definition—just like the one in *Watkins*—provides only that "[i]n this policy . . . 'We', 'us' and 'our' refer to the Company shown in the Declarations." Motion at 5. Not only is the term "Declarations" itself undefined, but the "Declarations" pages contain more references to State Farm than State Farm Florida. *See generally* ECF No. 51-1 at 3–6; *see also* FAC at ¶ 36.[2] In contrast, and equally significant to any reasonable insured, the title of the PAP is prominently displayed at the top of the first page as "**State Farm**® Personal Articles Policy." ECF No. 51-1 at 7 (emphasis added). There is not even *one* reference to State Farm Florida on the PAP's title page or anywhere else in the several pages of the policy's actual terms. *See generally id.*[3]

The confusing nature of the PAP and its ambiguity as to the identity of the insurer are no accident. State Farm Mutual was incorporated over a century ago in 1922, and it quickly grew into the nation's largest property and automotive insurer through decades of ubiquitous marketing campaigns where it consistently held itself out to consumers and insureds as simply, "State Farm." FAC at ¶ 36. When State Farm Mutual formed State Farm Florida and other subsidiaries in the State Farm Group as shells to limit its potential exposure in certain states, it continued to market the lines of insurance offered through those subsidiaries as products of the well-established "State Farm" brand, recognizing that consumers were much more likely to purchase insurance from the "State Farm" entity they had always known. *Id*.

---

[2] The PAP's referral to the "Declarations" in the definition of "Company" generates further confusion because the pages containing the declarations are in fact titled "Renewal Certificate," and the word "declarations" appears *nowhere* within them. ECF No. 51-1 at 3. The policy documents' sole reference to State Farm Florida in the Renewal Certificate also amplifies the ambiguity by indicating it was mailed to Plaintiffs from a State Farm office in Atlanta, *Georgia*, not Florida. *Id.* at 3.

[3] The PAP's ambiguity is further exacerbated by the policy's signature page, executed by Lynne M. Yowell as Secretary of the "**Company**." (ECF No. 51-1 at 14) (emphasis added). But Ms. Yowel is Secretary of *both* State Farm Mutual and State Farm Florida. FAC at ¶ 46. And she resides and works in Bloomington, *Illinois* where State Farm Mutual is headquartered. *Id*.

State Farm Mutual's scheme to portray the insurance offered by its subsidiary shell companies as products of the familiar "State Farm" brand did not end with marketing. According to the allegations in the FAC, State Farm Mutual drafted uniform PAP documents containing identical terms that it used and directed its subsidiaries to use nationwide. *Id*. at ¶¶ 2, 24–28, 40. State Farm Mutual intentionally crafted those policy documents to deceive insureds into believing State Farm Mutual was their insurer. *Id*. at ¶¶ 36, 41, 43. Not only did they refer almost exclusively to "State Farm," as discussed above, but the PAPs and related materials furthered the deception by encouraging insureds to contact "your State Farm agent" if they had "any questions about your premium, or policy coverages." ECF No. 51-1 at 6 ("State Farm® works hard to offer you the best combination of cost, protection, and service."); *see also id.* at 5 ("Important information regarding your policy premium[.] . . . If you have any questions regarding the information in this notice, please contact your State Farm agent.").

Even if the PAP clearly and unambiguously identified State Farm Florida as the insurer—which it plainly does not—liability can and should still be imputed to State Farm Mutual because Plaintiffs have alleged that State Farm Mutual was responsible for administering the PAPs. *Derocher v. Zurich Am. Ins. Co.*, No. 3:08-CV-0797, 2008 WL 4671754 (M.D. Pa. Oct. 16, 2008). In *Derocher*, the plaintiff alleged the parent entity was a party to the insurance contract that plaintiff admitted *had been issued by the subsidiary* because the parent entity was "responsible for administering and adjusting plans written under the [subsidiary] name." *Id.* at *4. Based on the relationship between the parent entity and the subsidiary, as well as the plaintiff's allegation of the parent entity's involvement, the court reasoned that the complaint "state[d] a plausible claim and present[ed] a reasonable expectation that discovery will reveal evidence of an insurance contract between [p]laintiff and [the parent entity]." *Id*.; *see also McCarty v. Liberty Mut. Ins. Co.*, No. 15-CV-210-KHR, 2017 WL 730850, at *3 (D. Wyo. Jan. 25, 2017) ("[T]he fact that the policy at issue in this case clearly identified [the subsidiary] as the insurer is *immaterial*, as the combination of a parent-subsidiary relationship combined with full control of the claims adjustment process supports a finding that the parent company was a party to the insurance contract.") (emphasis added).

Plaintiffs here have sufficiently alleged that liability under the PAP must be imputed to State Farm Mutual, not only based on the ambiguity of the insurer, but also because it exercised total control over the PAPs and their administration and adjustment. FAC at ¶¶ 18–40. In fact,

6

the FAC describes in detail how State Farm Mutual controls and is responsible for every aspect of all processes related to PAPs.[4] Accordingly, Plaintiffs' allegations are more than sufficient to impute liability under the PAP to State Farm Mutual based on either (1) the PAP's ambiguity as to the identity of the insurer; or (2) State Farm Mutual's control and responsibility for administration of the PAPs.

The cases on which Defendants rely in their failed attempt to refute these arguments are easily distinguishable. Defendants, for example, lean heavily on *Sandalwood Estates Homeowner's Ass'n, Inc. v. Empire Indem. Ins. Co.*, 665 F. Supp. 2d 1355 (S.D. Fla. 2009). But the court in *Sandalwood* held that the defendant parent insurance company could not be held liable under a policy that clearly and unambiguously identified the subsidiary as the insurer. *Id*. at 1359. The court did not reject the reasoning of *Watkins*; it simply found that case obviously distinguishable. *Id*. at 1359-60.[5] Plaintiffs' PAP, as discussed above, is very similar to the policy

---

[4] The FAC alleges that State Farm Mutual is licensed to engage in the insurance business in Florida and did, in fact, direct its business activities regarding the PAPs to residents of Florida. FAC at ¶ 8. The FAC also alleges that, consistent with its authority as an insurer of the PAPs in Florida, State Farm Mutual prepared the PAPs and authorized State Farm Florida to issue them to Florida customers, including Plaintiffs, seeking to enter into "State Farm" PAP contracts. *Id*. at ¶¶ 8, 24–28, 44; *see also* Fla. Stat. § 624.03 (defining "insurer" under Florida law). State Farm Mutual designed and implemented the claims process for PAPs throughout the country. FAC at ¶ 24. State Farm Mutual controls and operates the claims process for PAPs among all members of the State Farm Group through company-wide, systematic, and uniform practices, and State Farm Mutual operates as a single, integrated enterprise for claims adjustment and administration purposes, including, without limitation, the conduct and subject matter at issue in this action. *Id.* State Farm Mutual controls all aspects of underwriting, operations, and decision making relating to PAPs for State Farm Florida and its other subsidiaries in the State Farm Group, including risk assessment, oversight, actuarial, administrative services, claims, risk management, financial operations, investment, legal, public affairs, and underwriting. *Id.* at ¶ 25. State Farm Mutual was and is responsible for all decisions affecting holders of PAPs, including Plaintiffs and members of the Class. *Id.* at ¶ 26. State Farm Mutual was and is responsible for all the decisions relating to insurance underwriting of PAPs for State Farm Florida and its other subsidiaries in the State Farm Group. *Id.* at ¶ 27. State Farm Mutual was and is responsible for setting premiums for all PAP policies, including those held by Plaintiffs and members of the Class. *Id.* at ¶ 28.

[5] ("[The parent]'s name appears on one page of the policy while the parent company's name in *Watkins* was scattered throughout the policy. Unlike the policy in *Watkins*, [the parent]'s name does not appear within the terms of the policy so as to create an ambiguity as to which company is actually providing insurance coverage."). Compare those facts to the PAP at issue here: parent State Farm Mutual's name is the one scattered throughout the policy and subsidiary State Farm Florida's name is the one that does *not* appear within the terms of the policy.

7

in *Watkins* and *not* to the one in *Sandalwood*.[6]  The other cases on which Defendants rely are similarly inapposite because the policies at issue were unambiguous and clearly identified the subsidiary as the insurer.  *See Ordonez v. Chubb & Son, Inc.*, 2012 WL 13014694 (S.D. Fla. Feb 9, 2012); *Weiner v. Fed. Ins. Co.*, 2011 WL 13229316 (S.D. Fla. Dec. 16, 2011).  Defendants' *own* parenthetical summarizing *Buffalo Xerographix, Inc. v. Hartford Ins. Grp.*, 540 F. Supp. 3d 382, 392 (W.D.N.Y. 2021), highlights the inapplicability of their authority to the present case: "granting motion to dismiss where declaration page reflected that the 'we,' 'us,' and 'our' under the policy referred to the subsidiary and not the parent."  Motion at 6.  Here, of course, the "we," "us," and "our" under the PAP ambiguously refer only to some nameless "Company."

In sum, Plaintiffs have more than sufficiently alleged that liability under the PAP should be imputed to State Farm Mutual because the contract is ambiguous as to the identity of the insurer and State Farm Mutual exercises complete control over all processes related to PAPs and their administration.  The FAC's highly detailed allegations are reinforced by the PAP itself, which demonstrates that Defendants intended to create the impression that State Farm Mutual was the policy's insurer.  Defendants are asking this Court to ignore Plaintiffs' allegations, accept their own interpretation of the policy's ambiguities, and draw all inferences in their favor.  The Court should reject Defendants' attempt to completely flip the motion to dismiss standard on its head.

**B. State Farm Mutual is Liable for the Acts of its Subsidiary.**

Plaintiffs' allegations establish that State Farm Mutual is a party to the PAP.  But even if it were not a party to that contract, the allegations are sufficient to find that it is liable for the acts of its subsidiary, State Farm Florida.  A parent company can be held liable for the acts of its subsidiaries in three ways: "(1) an alter ego theory to 'pierce the corporate veil;' (2) vicarious liability based on general agency principles; or (3) direct liability where the parent directly participated in the wrong complained of."  *Salinero v. Johnson & Johnson*, No. 18-23643, 2019

---

[6] The *Sandalwood* court also refused to reject the reasoning of *Derocher*, instead finding it clearly distinguishable where "[t]he complaint contains no allegations that [the parent entity] somehow took over the policy from [the subsidiary] and *the policy itself shows that [the subsidiary] was the insurer*."  *Sandalwood*, 665 F. Supp. 2d at 1360 (emphasis added); *see also id.* at 1360 n.2 (further distinguishing *Derocher* because the *Sandalwood* policies at issue unambiguously identified the subsidiary as the contracting entity).

WL 4585215, at *2 (S.D. Fla. Sept. 20, 2019). The allegations in the FAC establish State Farm Mutual's liability on all three of these bases.[7]

### 1. Alter Ego.

Liability based on the alter ego theory applies "where the separate identity of two corporations should be disregarded where one corporation becomes the conduit of another" and "where the near identity of two corporation should be disregarded in order to prevent manifest injustice to third parties." *Talen's Landing Inc. v. M/V Venture II*, 656 F.2d 1157, 1160 (5th Cir. 1981) (quotations omitted);[8] *see also Century Sr. Services v. Consumer Health Ben. Ass'n, Inc.*, 770 F. Supp. 2d 1261, 1265–66 (S.D. Fla. 2011) ("A party seeking to pierce the corporate veil and prove alter ego liability must show both a blurring of corporate lines, such as ignoring corporate formalities or using a corporation for the stockholder's personal interest, and that the stockholder used the corporation for some illegal, fraudulent or other unjust purpose.") (citations omitted).

In determining whether to pierce the corporate veil, courts consider a variety of factors such as: (1) common or overlapping directors and officers; (2) use of same corporate office; (3) inadequate capitalization of subsidiary; (4) financing of subsidiary by parent; (5) parent's use of subsidiary's property and assets as its own; (6) informal intercorporate loan transactions; (7) decision-making for subsidiary by parent and principles; (8) non-observance of formal legal requirements; (9) existence of fraud, wrongdoing, or injustice to third parties. *Talen's Landing*, 656 F.2d at *15, n. 12. The FAC sufficiently alleges each of these factors such that the Defendants' motion to dismiss must be denied;[9] *see Eckhardt v. United States*, No. 08-21791-CIV,

---

[7] Determining whether each of these three bases is applicable requires a factual analysis, making dismissal prior to discovery inappropriate. *See Eckhardt v. United States*, No. 08-21791-CIV, 2010 WL 11504339, at *6 (S.D. Fla. July 8, 2010), *aff'd*, 463 Fed. Appx. 852 (11th Cir. 2012) ("[T]he issue of whether to disregard the corporate entity involves a fact-specific inquiry, depending on the totality of the circumstances.").

[8] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all the decision of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

[9] *See, e.g.*, FAC at ¶¶ 21–22, 29 (alleging that State Farm Mutual exerted complete control over State Farm of Florida, evidenced by its 100% ownership of State Farm Florida and State Farm Mutual's actions of taking over all relevant corporate filings); *id.* at ¶¶ 24–28, 44 (alleging State Farm Mutual exercises full decision-making and control over the PAPs issued in Florida, including

2010 WL 11504339, at *6 (S.D. Fla. July 8, 2010), *aff'd*, 463 F. App'x. 852 (11th Cir. 2012) (reasoning that the standard for ignoring the corporate device is a practical one, based largely on a reading of the particular factual circumstances) (citing *Jarro v. United States,* 830 F. Supp. 606, 609 (S.D. Fla. 1993)).

The FAC alleges that State Farm Mutual intentionally sought to market itself as a single State Farm entity, FAC at ¶ 36, that State Farm Mutual intended to convey the appearance to Florida customers that they were purchasing a PAP from this single-enterprise State Farm entity, *id.*, and that this was part of State Farm Mutual's fraudulent scheme to lure Florida customers into a "State Farm" PAP that State Farm Mutual intended to breach while intending to use State Farm Florida to improperly limit liability thereon. *Id*. at ¶¶ 36, 41, 43. These allegations—as a matter of law—sufficiently allege a basis to pierce the corporate veil. *See Zhejiang Dushen Necktie Co., Ltd. v. Blue Med, Inc.*, 16-24679-CIV, 2017 WL 4119604, at *5 (S.D. Fla. Sept. 18, 2017) (denying motion to dismiss after finding that plaintiff sufficiently stated a claim to pierce the corporate veil where plaintiff's "allegations show a 'blurring of corporate lines' meant to further an improper purpose," including by alleging that the shareholders have "complete dominion and control over their companies and have held themselves out as being inseparable from their companies")

---

in the process regarding premiums and claims); *id.* at ¶¶ 18, 24 (alleging there is no true separate identity between State Farm Mutual and State Farm Florida, and that State Farm Mutual operates as a single, integrated enterprise for claims adjustment and administration purposes); *id.* ¶¶ 19–20, 37–39 (alleging State Farm Mutual exercises complete control and decision-making over the employees shared by State Farm Mutual and State Farm Florida, most of which overlap amongst the entities' board of directors and other key roles); *id.* at ¶ 23 (alleging a lack of corporate formalities between State Farm Mutual and State Farm Florida where, aside from sharing employees, all books and records are maintained at State Farm Mutual's principal place of business); *id.* at ¶¶ 30–35 (alleging State Farm Mutual's funding of State Farm Florida and State Farm Mutual's provision of other financial assistance, including setting up key processes to reduce the need for formal intercorporate loan transactions); *id.* at ¶ 33 (alleging shared use of insurance and underwriting facilities and other facilities); *id.* at ¶ 35 (alleging State Farm Mutual intentionally presents itself, State Farm Florida, and other subsidiaries in the State Farm Group to consumers as a single entity—"State Farm"—to induce Florida residents to enter into PAPs with State Farms); *id.* at ¶¶ 45–48 (alleging that State Farm Mutual issued PAPs to Plaintiffs that intentionally created the appearance that Plaintiffs and class members were contracting with a single State Farm entity); and *id.* at ¶¶ 40–43, 53–55 (alleging State Farm Mutual's misuse of State Farm Florida as a mere instrumentality to shield itself from liability State Farm Mutual *knew* would arise from its intentional scheme to deprive customers of the returns of their unearned premiums pursuant to the deceptive PAPs and subsequent breach of contracts relating thereto).

(citations omitted); *Century Sr. Services v. Consumer Health Ben. Ass'n, Inc.*, 770 F. Supp. 2d 1261, 1265–66 (S.D. Fla. 2011) (finding there were sufficient allegations to support piercing the corporate veil theory where it was alleged that "[the parent entity] failed to keep CSS at an arm's length, that it blurred the lines between the two corporations, such as by having [the parent entity] manage CSS directly and by sharing a principal place of business, and that [the parent entity] used CSS for a fraudulent purpose by using it to mislead creditors and to shield [the parent entity] from liability for conversion and theft"); *Eckhardt v. United States*, No. 08-21791-CIV, 2010 WL 11504339, at *6 (S.D. Fla. July 8, 2010), *aff'd*, 463 F. App'x. 852 (11th Cir. 2012) (piercing corporate veil where the corporation "had no meaningful independent existence apart" from the shareholder).

**2. Agency.**

State Farm Mutual is also liable under the theory of apparent agency. To establish an apparent agency, "a Plaintiff must show (a) a representation by the purported principal; (b) a reliance on that representation; and (c) a change of position by the third party in reliance on that representation." *Appel v. Liberty American Ins. Co.*, No. 08-20385, 2008 WL 1133591, at *3 (S.D. Fla. Nov. 21, 2008).

In *Appel*, the court found those apparent agency elements satisfied under circumstances very similar to those present here. *Id*. at *4. In that case, a parent insurance company sought dismissal of breach of contract claims, arguing that the plaintiffs lacked standing because their insurance contract was not with the parent, but one of its subsidiaries. *Id*. at *2. The court denied the motion to dismiss, holding that the parent was liable under the theory of apparent agency, finding that the language of the policy gave the appearance that the subsidiary was an agent of the parent. *Id*. at 4–5 ("The appearance of [the subsidiary]'s name in the headers and footers of the policy and the Declarations Page leads to the conclusion that these forms are [the parent's] forms. The policy language itself was therefore a representation to Plaintiffs that [the subsidiary] was an agent of [the parent] and this representation was sufficient to lead to reliance by the Plaintiffs."); *see also Ilgen v. Henderson Properties*, 683 So.2d 513, 514–15 (Fla. 2d DCA 1996) (same).

As discussed in detail above, the language of the PAP here similarly creates the impression that State Farm Mutual is the insurer. Accordingly, this Court should follow *Appel* and find State Farm Mutual liable on the theory of apparent agency.

### 3. Direct Liability.

The allegations in the FAC also establish that State Farm Mutual directly participated in its own wrongful policies and procedures through the direction and control of its subsidiary. FAC at ¶ 40–41, 43; *see also In re Managed Care Litig.*, 298 F. Supp. 2d 1259, 1309 (S.D. Fla. 2003) (citing *United States v. Bestfoods*, 524 U.S. 51, 64–65 (1998)), which notes that derivative liability is distinguished from direct liability where "the alleged wrong can seemingly be traced to the parent through the conduit of its own personnel and management" and the parent directly participated in the wrong at issue). Plaintiffs allege that State Farm Florida is required to use the practices, policies, and procedures of State Farm Mutual and that the parent and subsidiary engage in a routine and uniform systematic practice to avoid refunding their unearned premiums. FAC at ¶¶ 2, 25–29, 38. These allegations are sufficient to establish State Farm Mutual's direct liability. *See AA Suncoast Chiropractic Clinic, P.A. v. Progressive Am. Ins. Co.*, No. 8:15-CV-2543-T-26MAP, 2016 WL 740719, at *2 (M.D. Fla. Feb. 25, 2016) (same).

Further, Plaintiffs allege State Farm Mutual directly participated in formulating and implementing the wrongful acts relevant to Plaintiffs' claims and was ultimately responsible for the uniform and common practice to not refund its unearned premiums while giving consumers the impression that they were entering into contracts with State Farm Mutual. *See* FAC at ¶¶ 2, 25–29, 36, 38; *see also In re Managed Care Litig.*, 298 F. Supp. 2d at 1309 (holding that plaintiff had standing to sue parent corporations because plaintiff alleged "that the parent corporations directly participated in formulating and implementing the [alleged harms]"). As the Eleventh Circuit has held, "[i]t is not necessary . . . that there be a direct contractual relationship between [plaintiff] and [the parent company] for the latter to be liable for the wrongful breach of contract." *Jackam v. Hosp. Corp. of Am. Mideast, Ltd.*, 800 F.2d 1577, 1580 (11th Cir. 1986). The complaint must only allege that there is "a sufficient connection between the parent organization and the contracts in question to maintain the parent organization as a party." *Id.* Here, Plaintiffs sufficiently allege a connection between State Farm Mutual and the PAPs, including that State Farm Mutual prepared the PAPs and offered them to customers via its subsidiary, and the PAPs show that they are the copyrighted material of State Farm Mutual. *See* FAC at ¶¶ 24–28, 47.

### C. Plaintiffs Properly Allege CAFA Subject Matter Jurisdiction.

Defendants argue that, if this Court credits their argument that State Farm Mutual is not a party to the PAP, that entity's dismissal would destroy subject matter jurisdiction pursuant to the

Class Action Fairness Act ("CAFA"). As discussed above, however, Plaintiffs' allegations and the terms of the PAP easily establish that the question of State Farm Mutual's liability cannot be resolved at the pleading stage. But subject matter jurisdiction would exist even if State Farm Mutual were not a party to this action.

CAFA gives district courts subject matter jurisdiction over a class action claim provided that: (1) the aggregate amount in controversy of the claims of the individual class members exceeds $5,000,000, exclusive of interest and costs; (2) there is minimal diversity where any member of the class is a citizen of a State different from any defendant; (3) the action involves claims of 100 or more plaintiffs; and (4) the plaintiffs' claims involve common questions of law or fact. 28 U.S.C. § 1332(d). The factors at issue in Defendants' Motion to Dismiss are whether the aggregate amount in controversy exceeds $5,000,000 and whether minimal diversity exists if State Farm Mutual is dismissed from this case.

As a threshold matter, the FAC specifically alleges that the aggregate amount in controversy exceeds five million dollars, exclusive of interest and costs. FAC at ¶ 10. This allegation is sufficient, and the Court should not second guess it based on Defendants' unsupported assertion that the allegation is inaccurate. *Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1220 (11th Cir. 2007) (it would be "impermissible speculation" for a court to hazard a guess on the jurisdictional amount in controversy without evidence). A party seeking federal jurisdiction "is not required to prove the amount in controversy beyond all doubt or to banish all uncertainty about it[,]" and the law does not "demand perfect knowledge or depend any less on reasonable inferences and deductions than we all do in everyday life." *See Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 754 (11th Cir. 2010). Rather, CAFA jurisdiction is established if the party seeking it makes factual allegations combined with reasonable inferences or other reasonable extrapolations. *Id.*

If a party makes a good faith claim that the required jurisdictional amount is satisfied, then "that claim controls unless it appears 'to a legal certainty that the claim is really for less than the jurisdictional amount.'" *Reilly v. Amy's Kitchen, Inc.,* 2 F. Supp. 3d 1300, 1302 (S.D. Fla. 2014) (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938)). A district court can find that a sufficient basis for jurisdictional prerequisites exists, even where a complaint is silent as to any specific amount of damages, if it alleges that the aggregate value of the claims of the putative class exceeds $5,000,000 and there is no specific, factual dispute on the issue. *See Lopez v. Progressive Select Ins. Co.*, No. 18-61844-CIV, 2019 WL 7371823, at *4 (S.D. Fla. Mar.

15, 2019), *report and recommendation adopted*, No. 0:18-CV-61844-WPD, 2019 WL 4731644 (S.D. Fla. May 14, 2019).

Contrary to Defendants' argument, diversity jurisdiction exists under CAFA even if State Farm Mutual is dismissed. In a class, there is diversity jurisdiction when "*any member of a class of plaintiffs is a citizen of a State different from any defendant.*" 28 U.S.C. §1332(d)(2) (emphasis added). Accordingly, diversity between *any single member of a class* of plaintiffs and any defendant confers CAFA jurisdiction. Plaintiffs plainly allege that the proposed Class includes members that are citizens of a State other than Florida, thereby establishing that diversity even if State Farm Mutual is dismissed. FAC at ¶ 10.

### III. THIS COURT HAS PERSONAL JURISDICTION OVER STATE FARM MUTUAL.

Based primarily on its contention that it is not a party to the PAP at issue in this case, State Farm Mutual argues that the FAC fails to adequately plead personal jurisdiction. As discussed above in Section II(A), however, the allegations in the FAC establish that State Farm Mutual is, in fact, a party to the PAP. But personal jurisdiction exists over State Farm Mutual even if it is not deemed contractually liable.

Defendants do not dispute that personal jurisdiction exists over State Farm Florida. Nor can they, as State Farm Florida is a Florida corporation with offices and significant contacts in this state. As discussed in Section II(B) above, Plaintiff has sufficiently alleged that State Farm Mutual is liable for the acts of State Farm Florida on three independent bases. Accordingly, personal jurisdiction over State Farm Mutual exists based on the admittedly sufficient contacts of its subsidiary, State Farm Florida. *See Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1275 (11th Cir. 2002); *see also Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1363 (11th Cir. 2006).

Moreover, because Plaintiffs' venue allegations are facially sufficient, State Farm Mutual's failure to submit an affidavit factually contesting Plaintiffs' jurisdictional allegations is fatal to its argument that personal jurisdiction is lacking. In *Venetian Salami Co. v. Parthenais*, 554 So. 2d 499, 502–03 (Fla. 1989), the Florida Supreme Court outlined the basic procedure for long-arm jurisdiction cases. The court held that a plaintiff must first allege a jurisdictional basis in his pleading. Then, if the defendant wishes to contest these allegations, he must file an affidavit specifically addressing the allegations. Once a defendant submits an appropriate affidavit, the

14

plaintiff must support his allegations with an affidavit of his own. If no disputed factual issues appear on the face of the opposing affidavits, the trial court can decide the long-arm issue without holding an evidentiary hearing. However, if the opposing affidavits conflict with one another, the trial court must "hold a limited evidentiary hearing in order to determine the jurisdiction issue." *Id.*; *see also Clover Sys., Inc. v. Almagran, S.A.*, No. 05-22539-CIV, 2007 WL 1655377, at *2 (S.D. Fla. June 7, 2007) ("To successfully challenge personal jurisdiction, [Defendants] cannot rely on conclusory statements but rather must provide specific factual declarations relevant to the court's jurisdictional analysis.") (citing *Meier v. Sun Int'l Hotels, Ltd.,* 288 F.3d 1264, 1269 (11th Cir. 2002)).   State Farm Mutual's argument that personal jurisdiction is lacking should be rejected because it has failed to factually dispute Plaintiffs' allegations.

## IV.     VENUE IS PROPER IN THIS DISTRICT.

Defendants argue that venue is not appropriate in this District based on a mischaracterization of Plaintiffs' allegations and the venue statute.  Venue is appropriate here because State Farm Florida resides in the Southern District of Florida and its residency must be imputed to State Farm Mutual.

Where, as here, a civil action is brought in a district court, 28 U.S.C. §1391 governs venue. Pursuant to 28 U.S.C. §1391(b), venue is proper if *any one* of the following are satisfied: (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action. 28 U.S.C. §1391(b) (emphasis added).  Defendants' argument is predicated on the supposition that this case is governed exclusively by §1391(b)(2).

The venue statue is drafted in the disjunctive, a fact Defendants flatly ignore. *See Mobile Diagnostic Imaging, Inc. v. Gormezano*, No. 12-60888-CIV, 2012 WL 3244664, at *1 (S.D. Fla. Aug. 9, 2012). While Plaintiffs have alleged facts showing that venue is proper based on 28 U.S.C. § 1391(b)(2) because a "substantial part of the events or omissions giving rise to the claim occurred" here, *see, e.g.*, FAC at ¶ 11, 28 U.S.C. § 1391(b)(1) also applies based on Defendants' residence in this District.

A defendant "resides" in a district where its contacts would be sufficient to establish personal jurisdiction in that district. 28 U.S.C. §1391(d). Defendants do not and cannot dispute that State Farm Florida maintains significant contacts in the Southern District of Florida. Venue here is, therefore, appropriate under §1391(b)(1). The requirement that "all defendants are residents of the State in which the district is located" is also satisfied. *Id*. Plaintiffs have demonstrated above that the conduct and contacts of State Farm Florida in connection with Defendants' scheme to uniformly breach their contractual obligations under the PAPs must be imputed to State Farm Mutual, which stands in its shoes. *See Meier*, 288 F.3d at 1275; *see also Stubbs*, 447 F.3d at 1363.

Venue exists in this District based on State Farm Florida's undisputed residency here and State Farm Mutual's liability for its actions in connection with the PAPs. Defendants' request to transfer this action should be denied. *SME Racks, Inc. v. Sistemas Mecanicos Para Electronica, S.A.*, 382 F.3d 1097, 1101 (11th Cir. 2004) (noting that a plaintiff's choice of forum should rarely be disturbed "unless the balance is strongly in favor of the defendant") (citing *Gulf Oil Corporation v. Gilbert*, 330 U.S. 501, 508 (1947)).

## V. THE UNJUST ENRICHMENT CLAIM IS PROPERLY PLED IN THE ALTERNATIVE.

It is well settled that a plaintiff may maintain a claim for unjust enrichment arising out of a breach of contract if that claim is pled in the alternative. *See, e.g.*, *Napa Overseas, S.A. v. Nextran Corp.*, No. 16-20862-CIV-MORENO, 2016 WL 3841677, at *5 (S.D. Fla. July 12, 2016) ("Nothing prevents Plaintiff from pursuing alternative claims of breach of contract and unjust enrichment in separate counts.") (internal citations and quotations omitted); *see also* Fed. R. Civ. P. 8(d). Defendants admit this alternative pleading is permissible, but they nevertheless assert that Plaintiff's alternative unjust enrichment claim should be dismissed because it is based on "the express insurance policy between Plaintiffs and his insurer." Motion at 19.

But dismissal of an alternatively pled unjust enrichment claim is premature at the motion to dismiss stage. *Napa*, 2016 WL 3841677, at *5. Indeed, an unjust enrichment claim only fails when there is *no dispute* about the existence of an express contract between the parties. *Id*. Defendants, however, dispute that any contract exists between Plaintiffs and State Farm Mutual.

The authority upon which Defendants rely is inapposite because, in those cases, the existence of the contract among the parties was ***not*** in dispute. *See Zarrella v. Pacific Life Ins. Co.*,

16

755 F.Supp.2d 1218, 1227 (S.D. Fla. 2010) ("The parties do not dispute the existence of an express contract governing their insurance policy agreement, so the equitable remedy of unjust enrichment is not available."); *Arch Specialty Ins. Co. v. Florida Window Co.*, No. 18-cv-24237-UU, 2018 WL 11359301, at *2 (S.D. Fla. Dec. 18, 2018) ("Unjust enrichment may only be pleaded in the alternative where one of the parties asserts that the contract governing the dispute in invalid.") (citations omitted). Accordingly, dismissal of the alternatively pled unjust enrichment claim here is not appropriate.

### VI. DEFENDANTS ARE NOT ENTITLED TO A MORE DEFINITE STATEMENT.

Finally, Defendants request a more definite statement on the basis that Plaintiffs have impermissibly engaged in "group pleading" by jointly referring to Defendants as "Defendants." But that concern is inapplicable here. That FAC sometimes refers to both State Farm Mutual and State Farm Florida as "Defendants" because, as is alleged in detail, State Farm Mutual acted through State Farm Florida and exercised complete control over it. FAC at ¶¶ 18–40. Accordingly, on those occasions when Plaintiffs refer to both entities as "Defendants," there is no confusion as to which entity was acting–they both were. The Court should deny Defendants' request for a more definite statement. *See FTC v. Centro Natural Corp.*, No. 14-23879-CIV, 2014 WL 7525697, *7 (S.D. Fla. Dec. 10, 2014) (denying motion for more definite statement based where complaint referred "Defendants" as a group without specifying what each did in their individual capacities).

### CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' Motion to Dismiss the First Amended Class Action Complaint in its entirety.[10]

---

[10] If the Court is inclined to grant any part of Defendants' motion to dismiss, Plaintiffs respectfully request that they be granted leave to file a second amended complaint. *See Canon Latin Am., Inc. v. Lantech (C.R.), S.A.*, 08-21518-CIV, 2009 WL 10664392, at *6 (S.D. Fla. Apr. 29, 2009) (denying in part defendants' motion to dismiss and granting plaintiff leave to file a *second* amended complaint after reasoning that "there is a conceivable factual basis on which [plaintiff's] claims would survive").

Dated: March 23, 2023

Respectfully submitted,

**PODHURST ORSECK, P.A.**

By: /s/ *Peter Prieto*
Peter Prieto (Florida Bar # 501492)
John Gravante, III (Florida Bar #617113)
Matthew P. Weinshall (Florida Bar #8478)
One S.E. 3rd Avenue, Suite 2300
Miami, FL 33131
Telephone: (305) 358-2800
Fax: (305) 358-2382
Email: pprieto@podhurst.com
jgravante@podhurst.com
mweinshall@podhurst.com

Michael Rudd
mrudd@rudddiamond.com
Florida Bar No. 782416
**Rudd & Diamond PA**
400 Hollywood Blvd.
Suite 120-N
Hollywood, Florida 33021
Phone: (954) 961-5059
Fax: (954) 961-8953
*Attorneys for Plaintiffs*

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 23, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent to counsel of record by operation of the Court's electronic filing system.

By: /s/ *Peter Prieto*
Peter Prieto